JUANA BURGOS MARTÍNEZ, Plaintiff and Appellant, *v.*
AURELIA VÁZQUEZ, Defendant and Appellee.

No. 7013.   Argued April 22, 1935.—Decided April 30, 1935.

*Felipe Colón Díaz* for appellant.   *C. Olivieri* and *R. Hernández Matos* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Juana Burgos Martínez, as legitimate mother of Lino Alvarez Burgos, brought suit to annul the registration of the birth of Aurelia Alvarez Burgos as legitimate daughter of the said Lino Alvarez Burgos and Monserrate Burgos Santiago. The nullity was also sought of the declaration of heirship made by the District Court of Ponce in favor of the said Aurelia Alvarez Burgos.

It was alleged in the complaint that Lino Alvarez Burgos died intestate in the town of Santa Isabel on September 6, 1933, without legitimate or acknowledged natural descendants, leaving as his sole and universal heir, his legitimate mother, Juana Burgos y Martínez; that Lino Alvarez Burgos contracted marriage with Monserrate Burgos Santiago on September 30, 1895, which marriage was dissolved by a decree of divorce on April 12, 1909, on a complaint brought by the husband, Lino Alvarez Burgos; that after the death of the said Lino Alvarez Burgos, the defendant herein, Aurelia Vázquez Burgos, appeared before the registrar of vital statistics of Santa Isabel, on October 2, 1933, and caused herself to be registered under the name of Aurelia Alvarez Burgos and as a legitimate daughter of Lino Alvarez Burgos

and Monserrate Burgos Santiago, setting forth that she was born on June 13, 1897; that using a certified copy of this fraudulent registration she appeared before the District Court of Ponce and obtained a judgment wherein she was declared to be the sole and universal heir of Lino Alvarez Burgos.

Aurelia Vázquez Burgos denied the essential facts which served as a basis for the action brought, and after the proper trial was had, judgment was rendered in favor of the defendant, with costs, expenses, and attorney's fees imposed on the plaintiff, who took an appeal from the decision of the lower court.

The appellee now asks that the appeal be dismissed and the judgment appealed from affirmed, on the ground that the appeal is entirely frivolous and has been taken merely for the purpose of delaying the final determination of the suit.

As the defendant aptly says, the real controversy in this case hinges upon the alleged physical impossibility of Lino Alvarez Burgos to have had access to his wife, Monserrate Burgos, during the first 120 days of the 300 preceding the birth of the daughter whose legitimacy is contested. The facts which the lower court declared proved are the following: That about the year 1895, the plaintiff, Juana Burgos Martínez, was living in the ward of Boca Velázquez of Santa Isabel, with her husband, Nicasio Alvarez Torres, and her children, among whom was the said Lino Alvarez Burgos; that there was also living in the said house, Monserrate Burgos Santiago, niece of the Alvarez-Burgos spouses and cousin of Lino, to whom she was engaged to be married; that about the latter part of December 1895, Monserrate eloped with Lino, who took her to the house of Zoila Descartes, in Santa Isabel, where they were married on December 30, 1895; that few days afterward Lino went with his wife Monserrate to the house of her brother Enrique, in the ward of Boca Velázquez, which house was located at a distance of about half a kilometer from the house of Lino's parents; that Lino went

to Monserrate's house every day, where he slept, although during the day he worked at his father's house; that on or about June 13, 1897, Monserrate gave birth to a daughter, who was named Aurelia, but she was never registered in the civil registry during Lino's lifetime; that said child was born while Lino and Monserrate were married and were living under the same roof; that after the child was a year old and had already begun to walk, Lino removed with his wife to Santa Isabel, where they lived for several months until, about 1901 or 1902, Lino left Monserrate, and the latter went to live at the house of a sister named María who was living with Marcial Vázquez as his wife, in the ward of Calambreñas; that later, about the year 1902, while Marcial Vázquez was living with Rosario Landrón, the latter asked Monserrate to give her the child Aurelia to bring up, to which the mother consented, provided the consent of her husband, Lino, were obtained, which Rosario Landrón did; that as a result the defendant, during her childhood, lived some fourteen years in the house of Marcial Vázquez and Rosario Landrón, whom she treated as parents, since they were the ones who brought her up; that on April 12, 1909, Lino Alvarez obtained a decree of divorce against his wife Monserrate Burgos in the District Court of Ponce, without the ground of the action being specified in the judgment and without any pronouncement whatever being made therein in regard to any children born of the marriage; that after the separation of Lino Alvarez and Monserrate Burgos, they both lived in concubinage with other persons, begetting other children; that Lino Alvarez was a strong, healthy man, and he died on September 6, 1933, in Santa Isabel, at the age of 69 years; that on October 2, 1933, Monserrate Burgos appeared before the registrar of vital statistics of Santa Isabel and registered the defendant as the legitimate daughter of herself and Lino Alvarez, born on June 13, 1897; that on October 11, 1933, the District Court of Ponce rendered judgment declaring as the sole and universal heir of Lino Alvarez Burgos his legitimate daughter

Aurelia Vázquez Burgos; that on registering for the election of 1932, in accordance with the Election Law, in the precinct of Santa Isabel, the defendant set forth in her petition dated April 18, 1932, that her name was Aurelia Vázquez Burgos and that her parents were Marcial Vázquez and Monserrate Burgos, and she explained that she did so because she was brought up in the house of Marcial Vázquez whom she considered as her father, and so treated him and called him, out of gratitude, since her father Lino Alvarez had never paid her any attention.

The lower court states that the evidence of the plaintiff tending to show that Lino abandoned Monserrate a few days after they were married, and went to Jayuya to live, did not deserve any credence whatever, as said evidence was contradictory, vague, and inconsistent, and also on account of the marked interest and passion of the witness, and because the testimony of Monserrate Burgos merited full credence. Nor did the lower court believe the testimony of Facio Alomar, who stated that Monserrate Burgos lived in concubinage with Marcial Vázquez, the defendant being the fruit of such relation. As to the defendant's witnesses, Marcial Vázquez and Rosario Landrón, the trial court said that by their manner of testifying and their distinguished and dignified bearing, they made a deep and favorable impression on the mind of the judge.

According to section 108 of the Spanish Civil Code, in force when Aurelia Vázquez Burgos was born, children born after 180 days next following that of the celebration of the marriage or within 300 days next following its dissolution or the separation of the spouses, shall be presumed to be legitimate. This presumption may be rebutted only by proof that it was physically impossible for the husband to have had access to his wife during the first 120 days of the 300 next preceding the birth of the child.

There is no evidence in the record to sustain the conclusion that in the instant case it was physically impossible

for Lino Alvarez Burgos to have had access to his wife during the first 120 days of the 300 that preceded the birth of the defendant.

Mention has been made with some insistence of a trip taken by Lino Alvarez Burgos to Jayuya, where, according to the testimony of various witnesses of the plaintiff, he remained for some time, and an attempt was made to show by this evidence the physical impossibility of the husband to have had access to his wife during the first 120 days of the 300 next preceding the birth of the defendant, who, as has been said, was born on June 13, 1897. We could well disregard the testimony of these witnesses, which merited no credence whatever from the lower court, but we wish to mention it, because, assuming it to be true, this evidence, if it proves anything, is precisely contrary to what the plaintiff intended, because it shows clearly that the absence, if any, was not continuous and that the physical impossibility, required by law, of the husband to have had access to his wife, did not exist. On the contrary, the very evidence of the plaintiff, far from rebutting the presumption of legitimacy, strengthens and affirms it. Pedro Rivera Burgos, a witness for plaintiff, stated that about the months of January and February of 1897, he went to Jayuya, accompanied by Lino Alvarez Burgos, and that it seemed to him that Lino came to Santa Isabel to see his family about twice a year. Facio Alomar, another witness for the plaintiff, testified that Lino worked as a clerk in Jayuya and visited Santa Isabel sometimes; not many times, but twice a year. And lastly, José Alvarez Burgos, Lino's brother, said that his brother was in Jayuya seven or eight months and that he came once to Santa Isabel to see his family. The evidence shows that about the time when Lino Alvarez Burgos was made to appear as absent in Jayuya, his wife Monserrate was living in a ward of Santa Isabel, where she gave birth to her daughter, the defendant, very near the Burgos family which, according to the plaintiff's witnesses, was visited twice a year by Mon-

serrate's husband. This evidence shows clearly the possibility of the husband's approaching his wife and having access to her. Moreover, if, as stated by Pedro Rivera Burgos, it was in January or February of 1897 that Lino Alvarez Burgos removed to Jayuya, it has not been shown that he was absent during the first 120 days of the 300 next preceding June 13 of the said year, which is the date on which, according to the evidence, Aurelia Vázquez was born. This is, in brief, all the evidence offered by the plaintiff for the purpose of proving that it was physically impossible for the husband to have had access to his wife during the first 120 days of the 300 next preceding the birth of the defendant. Apart from this evidence, there is no other indication in the record tending to show the physical impossibility required by the law, according to which the only evidence admissible to rebut the presumption of legitimacy is that of the physical impossibility of carnal access during the initial period of the intra-uterine life of the foetus. In the absence of this proof, the presumption of legitimacy preserves all its force and effect.

Several witnesses testified for the defendant, among whom special mention should be made of Monserrate Burgos, wife of Lino Alvarez. She testified that the defendant is the daughter of both of them and that marital relations continued until after the birth of Aurelia; that Lino always went to see her and that he took her from the ward where she was living, to the town, where he installed her in a room. The defendant herself also testified in support of her legitimacy.

In *Núñez* v. *Lacot,* 32 P.R.R. 76, an attempt was made by the mother herself and by the daughter to contest the legitimacy of the latter, who was born within the 301 days next following the dissolution of the marriage of Carmen Núñez and Luis Maldonado. The mother tried to show that during the pendency of the suit for divorce, Maldonado and she lived separately, he in Peñuelas and she in Ponce, and they had no carnal access. This court, construing section 181 of the

Revised Civil Code, equivalent to section 108 of the Spanish Civil Code, expressed itself as follows:

"What the appellant sought to show was that during the pendency of divorce Luis Maldonado and Carmen Núñez lived separately, the husband in Peñuelas and the wife in Ponce. Appellant cites jurisprudence to the effect that each case of alleged physical incapacity, or of absence, must be judged for itself and that definite rules may not be laid down. The commentators quoted were largely speaking of second marriages and of the deposit of the wife and other conditions that do not exist here. We feel bound to hold that the complainant Carmen Núñez has not successfully rebutted the presumption of legitimacy as set forth in section 181 of the Civil Code.

"The appellee truly points out that the living in Peñuelas does not negative the possibility of physical contact. This is not the 'absence' of the Civil Code or of the discussions of the commentators. Peñuelas at the time of the conception of Araceli Núñez was part of the jurisdiction of Ponce. Its nearness is revealed by the very witnesses in this case. Carmen was born in Peñuelas. Becerra frequently went there and one of the witnesses lived there. It was incumbent upon appellant to show a physical impossibility of contact.

"Of course one may readily understand the attitude of the complainant, assuming her averments to be true. She would then know that Araceli could not be the child of Maldonado and was the child of Becerra and would see an injustice in not permitting the actual facts to be established. Araceli Núñez herself, a girl of sixteen years, on the witness stand said that a person without a name was nobody. She was seeking to prove her true parentage, according to her. Nevertheless, neither the desires of the mother nor the daugther can avail. Society as expressed in the Civil Code has thrown a strong presumption around the legitimacy of children born while the marriage relation exists and for three hundred days thereafter. It is somewhat curious to witness the attempt by the child herself to destroy the presumption of legitimacy, but it is impossible for this court to make exceptions against the letter of the code, to say nothing of its spirit. The appellant failed to show a case within the exception clearly mentioned in the code."

In the *Enciclopedia Jurídica Española,* vol. 17, p. 802, it is said:

"What is meant by 'physical impossibility'? Our exaggerated meridional temperament has sought to extend the meaning, in prac-

tice, to the point of maintaining that only impotence manifested prior to conception could be characterized as such; but the Supreme Court has appropriately said that it also includes the absence of one of the spouses; that is to say, giving a more general character to this second cause, the removal of one of them to a distance, or anything that signifies a real and effective separation of the spouses, under such circumstances that cohabitation is deemed impossible; thus the judge, in the exercise of this untrammelled judgment, must take into account not only the distance separating the spouses but also the particular circumstances in order to determine that such distance could not have been bridged by either of them.

"Similary as to the husband's usual residence away from the conjugal domicile, in a case where the existence of material impediments or obstacles that remove any idea of an approximation, however momentary, is not shown.

"Conventional separation, together with the fact that the two spouses live either in the same town or in two near-by towns, is not sufficient to establish the physical impossibility of union.

"    *         *         *         *         *         *         *         *

"Our law does not accept 'moral impossibility' which is recognized more or less implicitly by others; thus, habitual remoteness, the husband's usual poor health, his advanced age, adultery on the part of the wife, not even when accompanied by concealment of pregnancy and childbirth, and even though she herself should testify against his capacity, and other circumstances which could be grounds for doubting the paternity, are not sufficient because they do not exclude the physical impossibility mentioned.

"Thus the least scintilla of doubt prevents the child from being deprived of his legitimacy."

To the same effect are the views expressed by the commentators Manresa, Scaevola, Sánchez Román, Díaz Martínez, and others.

Section 109 of the Spanish Civil Code, in force when Aurelia Vázquez was born, provides that a child shall be presumed to be legitimate even though the mother should have declared it to be illegitimate or should have been convicted of adultery. However, it has not been shown that Monserrate Burgos committed adultery before separating from her husband and during the initial period of the intra-

uterine life of her said daughter. The evidence of the plaintiff fell far short of convincing the trial court. It was alleged in the complaint that Aurelia Vázquez was the daughter of Marcial Vázquez. The evidence offered in support of this allegation was not believed by the lower court, as has been stated in this opinion. On the contrary, the testimony of Monserrate Burgos, Marcial Vázquez, and Rosario Landrón made a favorable impression on the mind of the judge.

In view of the fact that the evidence offered in support of the said allegation was not believed by the court *a quo*, we have nothing to say about its admissibility and its effect, or about the application that the said section 109 of the Spanish Civil Code might have thereto.

We are of the opinion that the appeal taken is frivolous and must be dismissed.

Mr. Justice Aldrey took no part in the decision of this case.